[S. F. No. 11925. In Bank.—January 27, 1927.]

In the Matter of the Estate of AURILLA JOHNSON, Deceased. AMOS O. WILLIAMS et al., Appellants, v. AURILLA MABEL WALLER, Respondent.

[1] ESTATES OF DECEASED PERSONS — WILL CONTEST — HOLOGRAPHIC WILL—EXECUTION—TESTAMENTARY CAPACITY.—In a contest of an instrument, alleged to be the holographic will of a deceased person, based upon a claim that the instrument was not entirely dated, written, and signed by the hand of the decedent, and that the latter was not of sound mind at the time of its execution, where the evidence is conflicting upon the issues, a verdict in favor of the contestant will not be disturbed on appeal.

[2] ID. — LACK OF TESTAMENTARY CAPACITY — PRESUMPTIONS. — Where an old person was declared by a decree of the superior court incompetent to manage her property or to care for her person, and

1. See 26 Cal. Jur. 1101.
2. See 26 Cal. Jur. 635.

a guardian of her person and estate was appointed, and thereafter by decree of said court she was adjudged an insane person and committed to the state hospital, such facts, together with the testimony of a witness that her mental condition was absolutely the same during a period covering the dates of said adjudications, which included the date of execution of her alleged will, raised a presumption of lack of testamentary capacity in executing the will.

[3] Id.—Evidence—Corroboration.—The fact that much of the testimony of the contestant in a will contest is uncorroborated does not for that reason remove it from the consideration of the jury.

[4] Id.—Instructions—Construction of.—In such a case where the court gave an instruction that, "The jury has the proposed will before it as well as the exemplars of the handwriting of Aurilla Johnson, and it is for you to determine *therefrom* whether or not this document is wholly written, dated and signed in the handwriting of the decedent. You may determine this issue even contrary to the opinion of an expert, or without the evidence of a handwriting expert," the contention that the use of the word "therefrom" withdrew from the consideration of the jury oral testimony relating to the genuineness of the document in question, and limited the jury's consideration of the evidence to the proposed will and exemplars, cannot be maintained, where the court further instructed the jury that the instructions must be considered by it as a whole and that the proposed will might be considered together with *all* the evidence in the case.

[5] Id.—Usurpation of Function of Jury—Expert Testimony.—The contention in such case that in said instruction the court usurped the function of the jury in stating that the issue might be determined "contrary to the opinion of an expert, or without the opinion of a handwriting expert," cannot be maintained, where no handwriting expert was called, as it may be assumed that the court meant testimony of such an expert was not necessary, which is a correct statement of the law.

[6] Id. — Handwriting — Determination of — Comparison of Documents.—In such a case, an instruction that the jury could determine the issue with reference to the handwriting of the decedent by the comparison of the documents and without the aid of the oral testimony of any witness is a correct statement of the law.

[7] Id. — Proof of Incompetency — Guardianship — Testamentary Capacity — Burden of Proof. — Proof of incompetency in a guardianship proceeding is evidence of mental condition on the date of the adjudication, but it is not *prima facie* evidence of testamentary incapacity so as to shift the burden of proof to the proponent of a will of the ward.

---

6. See 10 Cal. Jur. 860; 10 R. C. L. 993.

[8] ID.—ADOPTED CHILD—CONSIDERATION OF FACT—INSTRUCTIONS.—An adopted child is the lawful child of the decedent the same as though born in lawful wedlock, and in a contest by such child of the will of her adopted mother there is no error in instructing the jury that in considering the evidence it should bear in mind the legal effect of the adoption proceedings.

[9] ID.—EVIDENCE—PHYSICIAN AND PATIENT—PRIVILEGED COMMUNICATIONS.—A conversation between a doctor, who is medical superintendent of a state hospital for the insane, and an inmate thereof, for the purpose of ascertaining particularly the mental condition of the patient, is privileged and inadmissible in evidence in a contest of the will of the patient.

[10] ID.—IMPROPER QUESTION—LACK OF PREJUDICE.—In a will contest, where on cross-examination the contestant's counsel asked the sole beneficiary under the will the question, "Then you do not propose to be bound by the action of this jury in the event that they find that she was of unsound mind on April 3, 1923, do you?" to which objection was sustained, the failure to direct the jury to pay no heed to the question was not prejudicial error, where the court in other instructions specifically directed the jury to banish from their minds all questions propounded by counsel to which objections had been sustained.

---

(1) 40 Cyc., p. 1285, n. 26, p. 1311, n. 1, p. 1358, n. 75.    (2) 40 Cyc., p. 1019,. n. 2, p. 1278, n. 78.    (3) 40 Cyc., p. 1321, n. 62.
(4) 38 Cyc., p. 1784, n. 86, p. 1785, n. 90.    (5) 38 Cyc., p. 1652, n. 99.    (6) 40 Cyc., p. 1311, n. 99, 4.    (7) 40 Cyc., p. 1020, n. 8, p. 1022, n. 19.    (8) 1 C. J., p. 1398, n. 97; 38 Cyc., p. 1786, n. 97.
(9) 4 C. J., p. 1004, n. 63; 40 Cyc., p. 2381, n. 27, p. 2389, n. 88.
(10) 38 Cyc., p. 1711, n. 19; 40 Cyc., p. 1364, n. 14, 15.

APPEAL from a judgment of the Superior Court of Santa Clara County. John L. Hudner, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Maurice J. Rankin and L. H. Walker for Appellants.

H. A. Blanchard and Daniel Rygel for Respondent.

SHENK, J.—Aurilla Johnson died at the Agnews State Hospital for the Insane on January 11, 1924, at the age of

---

8.   See 1 Cal. Jur. 442.
9.   See 27 Cal. Jur. 58.

seventy-nine years. The public administrator of Santa Clara County offered for probate a document purporting to be her last will and testament, holographic in form. Emily W. Ewald, a niece of the deceased husband of the decedent, was named as the sole beneficiary. Aurilla Mabel Waller, an adopted daughter of the decedent and the respondent herein, was expressly omitted. The respondent contested the probate of the alleged will on the ground that the same was not entirely written, dated, and signed by the hand of the decedent and that decedent was not of sound mind on the day of its alleged execution. The case was tried before a jury which returned a verdict as to each issue in favor of the contestant. From the judgment on the verdict this appeal is prosecuted by the proponent and by the sole beneficiary named therein.

The grounds of appeal are that the evidence was insufficient to support the verdict on either of said issues and that the court erred in giving certain instructions and in admitting and excluding certain testimony.

[1] On the issue of whether the alleged will was wholly written, dated, and signed by the decedent evidence was introduced on behalf of the appellants to the effect that the said document was entirely written, dated, and signed by her. On the other hand, the contestant testified that while the signature attached to the document was genuine the remainder of the document was not in her mother's handwriting. If the latter testimony was believed by the jury to be true, and we must on appeal assume that it was, the said evidence was sufficient to support the verdict on that issue. As to the issue of testamentary incapacity the same situation is disclosed by the record, namely, a conflict in the evidence. [2] On behalf of the contestant it appeared that on the twenty-second day of March, 1922, the decedent was, in proceedings instituted in the superior court of Santa Clara County, declared to be incompetent to manage her property or to care for her person and a guardian of her person and estate was appointed. She was continuously thereafter subjected to such guardianship by judgments of said court. On the tenth day of May, 1923, she was by said court adjudged an insane person and committed to the Agnews State Hospital, where she remained until her death. The alleged will was dated April 3, 1923. No one claims to

have witnessed its execution. The appellant, Mrs. Ewald, tes-
tified that it was delivered to her by the decedent personally
a few days after its date. One of the physicians at the state
hospital testified that the decedent was suffering from senile
dementia to such an extent that she could not discern the
difference between day and night. The adjudication, on May
10, 1923, that the decedent was insane raised a presumption
that she was wanting in testamentary capacity on that date
(*Estate of Baker*, 176 Cal. 430 [168 Pac. 881]). The judg-
ments in the incompetency proceedings were evidence of the
mental condition of the decedent on the days of those ad-
judications. Assuming, as contended by appellants, that
neither the judgments in the incompetency proceedings nor
the adjudication of insanity on May 10, 1923, would be
sufficient to show want of testamentary capacity on April
3, 1923, the date of the alleged will, nevertheless the appel-
lant, Mrs. Ewald, testified that the mental condition of the
decedent was absolutely the same from October, 1922, to
December, 1923, which dates would include May 10, 1923,
when she was presumed to be lacking in testamentary ca-
pacity, and April 3, 1923, the date of the alleged will (see
*Estate of Loveland*, 162 Cal. 595 [123 Pac. 801]).

In addition to the record evidence and the testimony of
Mrs. Ewald there was other oral testimony on the issue of
want of testamentary capacity, both in support of and
against that issue. The contestant testified at length as to
the mental condition of the decedent for several years prior
to her death, including the period subsequent to October,
1922. From this testimony, coupled with the testimony of
Mrs. Ewald that the mental condition of the decedent was
absolutely the same from October, 1922, to December, 1923,
the jury was entitled to infer that on the date of the alleged
will the decedent did not possess testamentary capacity.

[3] The appellants urge that much of the testimony of
the contestant was uncorroborated, but even so, the same
was not for that reason removed from the consideration of
the jury (sec. 1844, Code Civ. Proc.). The record, therefore,
presents a conflict in the evidence as to both issues which,
when resolved in favor of the contestant by the jury, may not
otherwise be resolved on appeal.

[4] The appellants contend that the court committed
prejudicial error in giving the following instructions: "The

jury has the proposed will before it as well as the exemplars of the handwriting of Aurilla Johnson, and it is for you to determine therefrom whether or not this document is wholly written, dated and signed in the handwriting of the decedent. You may determine this issue even contrary to the opinion of an expert, or without the evidence of a handwriting expert." It is insisted that by the use of the word "therefrom" in the foregoing instruction the court withdrew from the consideration of the jury the oral testimony relating to the genuineness of the document in question and limited its consideration of the evidence to the proposed will and the exemplars. In the absence of other instructions given the point urged might present a serious situation, but the court went on to instruct the jury that the instructions must be considered by the jury as a whole and that the proposed will might be considered together with *all* the evidence in the case. When considered in their entirety it may not be said that the appellants were prejudicially affected by the use of the word complained of. [5] It is also insisted that in said instruction the court usurped the function of the jury in stating that the issue might be determined "contrary to the opinion of an expert, or without the opinion of a handwriting expert." No witness was called who assumed to be a handwriting expert in the sense of a professional examiner of questioned documents. It may fairly be assumed that the court meant, and that the jury understood, that the testimony of such an expert was not necessary to a determination of the issue. It is then a correct statement of the law. [6] If in the first use of the word "expert" the court referred to those witnesses who were familiar with the handwriting of the decedent it is also a correct statement of the law that the jury could determine the issue by comparison of the documents and without the aid of the oral testimony of any witness (*Castor* v. *Bernstein*, 2 Cal. App. 703 [84 Pac. 244]).

The court instructed the jury that the adjudications of March 22, 1922, and January 31, 1923, declaring the decedent to be an incompetent person in the guardianship proceedings were "*prima facie* evidence of want of testamentary capacity" on the dates of said orders. It is urged that such was not the legal effect of such orders. We are cited to no authority in this state and we have discovered

none since the amendment of section 40 of the Civil Code in 1878, holding that an adjudication of incompetency in a guardianship proceeding raises a presumption of testamentary incapacity or is even *prima facie* evidence of testamentary incapacity. *Estate of Johnson,* 57 Cal. 529, construed said section 40 prior to its amendment.  [7]  Proof of incompetency in a guardianship proceeding is evidence of mental condition on the date of the adjudication but it is not *prima facie* evidence of testamentary incapacity so as to shift the burden of proof to the proponent of the will (*Estate of Loveland, supra; Rice* v. *Rice,* 50 Mich. 448 [15 N. W. 545]). Notwithstanding the erroneous use of the term *"prima facie"* in the instruction complained of, we are of the opinion that the appellants were not prejudiced thereby in view of the fact that the court elsewhere fully instructed the jury that said adjudications of incompetency in the guardianship proceedings did not necessarily mean that the decedent was of unsound mind at the time of such adjudications or that she was not then competent to make a valid will; also that the adjudication of insanity of May 10, 1923, did not raise a presumption of testamentary incapacity on April 3, 1923, the date of the alleged will, and that the burden of proving that the decedent was of unsound mind at the time of the execution of the alleged will rested at all times upon the contestant. When considered as a whole we think the jury was made clearly to understand that notwithstanding the several adjudications the burden of proving unsoundness of mind on the date of the alleged will was always on the contestant.

[8]  Complaint is made of the instruction that "in weighing the evidence you must treat the contestant in this case in all respects as though she was born to Aurilla Johnson in lawful wedlock." It is insisted that the jury had the right to take into consideration the fact that the contestant was not a blood relative of the decedent but a relative only by adoption, and that the giving of said instruction was in violence of our constitutional provision forbidding a judge to charge the jury with respect to matters of fact. It was conceded at the trial that the contestant was the adopted child of the decedent. As such she was the lawful child of the decedent the same as though she had been born to the decedent in lawful wedlock (sec. 228, Civ. Code; 1 Cal.

Jur. 449). The instruction correctly declared the law and we find no error in the declaration by the court that in considering the evidence the jury should bear in mind the legal effect of the adoption proceeding.

[9] Complaint is also made of the ruling of the court in sustaining an objection to a question propounded to Doctor Stocking, wherein the witness was requested to relate a conversation he had with the decedent at the hospital. Doctor Stocking, as a physician and medical superintendent of the Agnews State Hospital, was interviewing the decedent as one of his patients in the hospital for the purpose of ascertaining particularly her mental condition. It does not appear that any third party heard the conversation and the objection was sustained on the ground that the said conversation was privileged. The witness was permitted to give his opinion as to the mental condition of the decedent at the time of the conversation and we find no prejudicial error in excluding evidence of the conversation itself.

[10] During the cross-examination of Mrs. Ewald, the contestant's counsel asked her the following question: "Then you do not propose to be bound by the action of this jury in the event that they find that she was of unsound mind on April 3, 1923, do you?" This question was objected to by appellants' counsel and the court was requested to instruct the jury to disregard the same. The court sustained the objection but did not at that time direct the jury to pay no heed to the question. The point is made that the refusal then to instruct the jury is prejudicial error. There is no merit in the contention, for the reason that in its instructions to the jury the court specifically directed the jury to banish from their minds all questions propounded by counsel to which objections had been sustained. This, we think, was all that was required under the record here presented.

The judgment is affirmed As the appeal herein appears to have been prosecuted in good faith, it is ordered that the costs of the appellants be paid out of the assets of said estate (sec. 1720, Code Civ. Proc).

Richards, J., Seawell, J., Waste, C. J., Curtis, J., Preston, J., and Langdon, J., concurred.